**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RADDY NOEL TORIBIO,** | : | |
| **Plaintiff,** | : | **Civil No. 10-CV-2441** |
| **v.** | : | |
| **BERNARD SPECE, et al.,** | : | **(JUDGE MANNION)** |
| **Defendants.** | : | |

## MEMORANDUM

Pending before the court are defendants' motions for summary judgment, (Doc. No. 36; Doc. No. 52), requesting dismissal of plaintiff's false arrest, false imprisonment, and malicious prosecution claims. (Doc. No. 47.) Because the court has determined that defendants Bernard Spece, Michael Sadusky, and Bernard Walasavage had probable cause to arrest plaintiff, were not motivated by malice, and were cloaked in the protection of qualified immunity, defendants' second motion for summary judgment will be **GRANTED IN ITS ENTIRETY,** defendants' first motion will be **DENIED** as **MOOT**, and plaintiff's complaint will be **DISMISSED WITH PREJUDICE**.

## BACKGROUND

This case arises from a series of bank robberies in which plaintiff claims that police officers arrested and prosecuted him without probable cause and refused to withdraw charges after obtaining exculpatory evidence from the

Mannheim Township Police Department. (Doc. No. 12.) Defendants Bernard Spece, Michael Sadusky, and Bernard Walasavage were all Pennsylvania State police officers who participated in the investigation of the bank robberies and plaintiff's arrest. (Doc. No. 53, at 2.)

On August 6, 2010, the Susquehanna Bank in Orwigsburg, Pennsylvania, was robbed after a string of similar crimes in the area. (Doc. No. 12, at 2.) Defendant Spece was assigned to the investigation and arrived at the bank, interviewed witnesses, and examined the bank surveillance videos. (Doc. No. 12, at 2.) In his police report, he noted:

> This incident occurred when the actor arrived at the scene in the vehicle listed on page 1 of this report. The actor entered the bank and when he was helped by a teller he handed the teller a note demanding money and instructing the teller to return the note. The teller complied and handed over money from her drawer, including bait money, but no dye pack or other devices. The actor then stuffed the money into the pockets of the cargo shorts he was wearing and exited the bank, entered his vehicle, and fled the scene. . . .
> Other evidence consisted of still pictures of the actor which were captured by the banks [sic] security video system (ref attached copies). Those pictures show the actor wearing black Nike Shox sneakers, dark colored cargo shorts, a long sleeve flannel pattern shirt, and a black baseball cap. The security pictures shows what appears to possibly be a Hispanic male with short hair, medium/muscular build, with facial hair. (Doc. No. 53, Attach. 3.)

In an attempt to identify the suspect, the police publicly released still pictures of the perpetrator's image in hopes of getting a tip. (Doc. No. 53, at 3.) Defendant Spece's supervisor, defendant Corporal Michael Sadusky, was

subsequently informed by another officer that plaintiff's former girlfriend called and said Raddy Toribio was the man in the photos. (Doc. No. 53, Attach. 3.) Defendant Sadusky called the woman and learned that her 5-year-old son saw a picture of the suspect on the news and said, "That's Daddy." (Doc. No. 53, Attach. 3.) When asked if she thought the picture resembled her ex-boyfriend, she said that "she cannot be 100 percent certain that a man – that the man was her ex-boyfriend due to the quality of the photos," but that "she was 95 percent sure that the male in the pictures were [sic] her ex-boyfriend." (Doc. No. 53, Attach. 3.)

Following this lead, defendant Walasavage prepared a photo lineup, (Doc. No. 53, Attach. 2), and showed it to two bank tellers and the bank manager on duty at the time of the robbery. (Doc. No. 53, at 3-4.) The parties agree that the lineup consisted of eight photographs shown to the witnesses simultaneously, but they disagree as to whether the witnesses were shown surveillance pictures of the robbery first. (Doc. No. 53, at 3-4; Doc. No. 55, at 2-3.) Defendants argue that the eyewitnesses were simply shown the lineup and asked to compare the photos with their recollection of the perpetrator from the day of the robbery. (Doc. No. 53, at 3-4.) Plaintiff contends that defendant Walasavage first showed the witnesses a surveillance picture of the perpetrator before asking them to identify him in the lineup. (Doc. No. 55, at 2-3.) In defendant Walasavage's deposition, (Doc. No. 53. Attach. 4),

however, he acknowledges that the witnesses were first shown the surveillance pictures and, because defendants do not point to anything in the record to support their version of the story, the court must accept plaintiff's version of the facts, i.e. that the witnesses were first shown the surveillance picture.

After viewing the photos, the two tellers identified plaintiff in the photo lineup, but the manager could not, having only seen the robber from the side. (Doc. No. 53, at 4.) Defendant Spece completed an affidavit of probable cause on August 2010, stating:

> On 08/06/10 at approx. 0950 hrs., a white male entered into the Susquehanna Bank, located on SR 61, West Brunswick Twp and proceeded to walk to a small table top desk area and penned a note on a piece of paper. The individual then waited in line for an available teller. Once the individual approached the teller he passed the handwritten note to the teller which related that, "this is a robbery, give me all your money." At the end of the note it was written, "give me the note back." Once the teller provided the individual with the money from the drawer he placed the money in his pocket and exited the bank through the front door. The individual then entered into a black vehicle, reportedly a Mazda RX7 and fled the scene in a southern direction. PSP Schuylkill Haven members arrived on the scene and conducted the interviews of the bank personnel as well as viewing the surveillance video. The above incident was observed on the surveillance video. Still pictures from that video were disseminated to the media in an attempt to identify the person involved in the robbery.
>
> On 08/06/10 at approx. 1800 hrs. Cpl. Michael SADUSKY, PSP Schuylkill Haven Criminal Investigation Unit Supervisor was notified by Lt. Thomas MCDANIEL, Troop "L" Reading Criminal Investigation Commander that there had been information from a police officer in Allentown that the actor had been made known to him. Cpl. SADUSKY arrived at PSP Schuylkill Haven and spoke

with Officer Josh BRUBAKER. BRUBAKER related that he was informed by a source who wished to remain anonymous that the person in the surveillance video was Raddy Toribio.

Three of the employees of the bank who were present during the robbery were contacted and requested to come to PSP Schuylkill Haven to view a photo lineup which included Raddy Toribio. At approx. 2000 hrs., Tara PANDHER, Deborah STEFFIE and Christy REBEHN arrived at PSP Schuylkill Haven. PANDHER and STEFFIE were independently shown the photo lineup and both positively identified Toribio in the eight person lineup as the person who had committed the robbery in the bank earlier on this day. (Doc. No. 53, Attach. 3.)

On August 10, 2010, defendants used the affidavit to obtain a warrant, and plaintiff was arrested and transported to PSP Schuylkill Haven. (Doc. No. 53, at 5.) According to his deposition testimony, defendant Sadusky had immediate reservations as to whether plaintiff was the same man that robbed the bank because "his height seemed to be shorter than reported by the bank tellers." (Doc. No. 53, Attach. 3.) To double check that plaintiff matched the suspect's description, defendant Sadusky asked the Susquehanna Bank manager and one of the tellers to come to the station, told them that they had a suspect in custody, and asked them if they would identify him as the robber. (Doc. No. 53, Attach. 2; Doc. No. 53, Attach. 3.) Plaintiff was not placed in a lineup; instead, defendant Sadusky took the witnesses to the interview room and had them view plaintiff, who was standing alone, through the one-way glass. (Doc. No. 53, Attach. 2.) Defendant Sadusky also had plaintiff stand up to verify his height, and both tellers said they were certain he was the right man. (Doc. No. 53, Attach. 2.)

Plaintiff was arraigned on $100,000 bail and was remanded to the Schuylkill County Prison in lieu of bail, where he remained from August 10, 2013 until his release on August 13, 2010. (Doc. No. 53, at 7.) On August 13, defendant Spece learned of another bank robbery that occurred the day before, August 12, 2013, in Mannheim Township, Lancaster County. (Doc. No. 53, at 7.) He called the officer in charge of the investigation and learned that the suspect in that robbery fit the description of the suspect in the Susquehanna Bank robbery. (Doc. No. 53, at 7.) Furthermore, images of the two robberies showed a resemblance between the suspects, and the license plates of the getaway cars were identical. (Doc. No. 53, at 7.) With this information in hand, defendant Spece contacted the district attorney's office, and plaintiff was released on bail the same day. (Doc. No. 53, at 7.) On August 16, 2010, three days after his release, the state withdrew all charges related to the robbery. (Doc. No. 53, at 7.)

On November 24, 2010, plaintiff filed a complaint, (Doc. No. 1.), and, on April 4, 2011, an amended complaint. (Doc. No. 12.) The state, representing Bernard Spece, filed a motion for summary judgment on June 15, 2012, seeking dismissal of the complaint in its entirety. (Doc. No. 36.) It then filed a superseding motion on behalf of Bernard Spece, Michael Sadusky, and Bernard Walasavage on March 28, 2013. (Doc. No. 52.) The substance of the second motion is the same as the first except that it names Michael Sadusky

and Bernard Walasavage as additional parties. (Doc. No. 52.) Therefore, the court will consider the first motion moot and address only the second.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482

F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

## **DISCUSSION**

## **I. FALSE ARREST**

Plaintiff first claims that he was subjected to a false arrest because defendants did not have probable cause to detain him. (Doc. No. 12, at 3.) False arrest is a private cause of action, pursuant to 42 U.S.C. §1983 and stemming from the Fourth Amendment, that provides relief when a person is arrested without probable cause. Dempsey v. Bucknell University, 11-CV-1697, 2012 WL 1569826, *5 (M.D.Pa. 2012); Kline v. Hall, 12-CV-1727, 2013 WL 1775061, *3 (M.D.Pa. 2013). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge at the moment the arrest was made are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Woodyard v. County of Essex, 12-CV-2945, 2013 WL 791634, *4 (3d Cir. 2013). In analyzing the issue, "a magistrate's determination of probable cause should be paid great deference by reviewing courts." Giacalone v. Pennsylvania Ins. Fraud Prevention Authority, 11-CV-1647, 2012 WL 629437, *3 (M.D.Pa. 2012).

Here, the question is whether the information in the affidavit was sufficient to find probable cause to issue an arrest warrant against plaintiff. The affidavit contained two pieces of inculpatory evidence – an anonymous tip and two photo lineup identifications by tellers at the Susquehanna Bank.

9

(Doc. No. 53, Attach. 3.) The Supreme Court has adopted a totality of the circumstances test but has also indicated that an uncorroborated, anonymous tip will rarely, if ever, establish reasonable suspicion, much less probable cause. Florida v. J.L., 529 U.S. 266 (2000); U.S. v. Ritter, 416 F.3d 256, 272 (3d Cir. 2005) ("Such conclusory anonymous tips do not amount to reasonable suspicion, much less probable cause"). In the case at hand, the affidavit states, "BRUBAKER related to [Spece] that he was informed by a source who wished to remain anonymous that the person in the surveillance video was Raddy Toribio." (Doc. No. 53, Attach. 3.) This information constitutes an anonymous tip but was corroborated by the two photo lineup identifications. (Doc. No. 53, Attach. 3.) The court believes that three identifications, only one of which is anonymous, clearly satisfied a probable cause standard, a criterion which merely requires a reasonable belief that the arrestee committed the crime. Laganella v. Don's & Son's Towing & Body Shop, 11-CV-1101, 2011 WL 7063643, *8 (M.D.Pa. 2011) (citing Radich v. Goode, 886 F.2d 1391, 1397 (3d Cir. 1989)). Nevertheless, plaintiff argues that the warrant was tainted by misrepresentations and omissions, thereby voiding the magistrate's otherwise valid probable cause determination.

A warrant supported by an affidavit will be invalidated as lacking probable cause if the plaintiff shows:

> by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with a reckless disregard for the

truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. Woodyard v. County of Essex, 12-CV-2945, 2013 WL 791634, *4 (3d Cir. 2013).

An omission is made with reckless disregard if "an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." Cummings v. City of Philadelphia, 137 Fed. Appx. 504, 506 (3d Cir. 2005). Furthermore, an omission is material if the judge issuing the warrant would not have issued it had all the facts been known. Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000). The Third Circuit has said, "[t]o determine the materiality of the misstatements and omissions, we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause." Id.

The materiality component of omissions ensures that officers need not disclose every minute detail of an investigation to the judge issuing the warrant. Wilson v. Russo, 212 F.3d 781, 787 (3d Cir. 2000). As the Third Circuit stated:

> All storytelling involves an element of selectivity. We cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip. . . . On the other hand, one of the reasons for requiring a neutral magistrate to evaluate probable cause is that an uninterested party is presumably better suited to review and evaluate the facts than an officer pursuing a lead. The point of the Fourth Amendment,

which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. It follows that a police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence. Id.

Plaintiff argues that several important details were omitted from or misrepresented in the affidavit. (Doc. No. 56.) He first argues that officers failed to disclose that plaintiff's five-year-old son identified plaintiff as the robber and that his ex-girlfriend stated that she was 95% sure it was him. (Doc. No. 56, at 17.) While plaintiff may be correct that this was an omission, it was by no means material. The affidavit stated that police got an anonymous tip while plaintiff argues there should have been information about the identity of informant, here plaintiff's son and ex-girlfriend. As previously stated, named sources carry more indicia of reliability than anonymous tips because a known informant's "reputation can be assessed and [she] can be held responsible if her allegations turn out to be fabricated." Florida v. J.L. 529 U.S. 266, 270 (2000). Here, the information, if included in the affidavit of probable cause, would appear to have only strengthened the magistrate's finding of probable cause. As such, the omission is not material.

Plaintiff also explains that there was no mention of plaintiff's height discrepancy in the affidavit. (Doc. No. 56, at 19.) According to plaintiff, one of

the witnesses described the robber as being 6'0" to 6'3" tall, (Doc. No. 56, at 19), but defendant Sadusky noted that plaintiff was only 5'9" tall when he was taken into custody. (Doc. No. 56, at 18.) Because this was information that came to defendants' attention after plaintiff's arrest, defendant Spece could not have included it in the affidavit and also could not have knowingly omitted it. Plaintiff responds by arguing that Sadusky knew plaintiff's height before the affidavit was filed, but he does not point to any evidence in the record to support this claim. (Doc. No. 56, at 18.) As such, considering only the evidence in the record, the court cannot conclude that defendant Spece knowingly omitted information about plaintiff's height.

Next, plaintiff points out that defendants omitted information about the photo lineup, particularly that one of the witnesses failed to identify the suspect. (Doc. No. 56, at 19-20.) The affidavit of probable cause states:

> Three of the employees of the bank who were present during the robbery were contacted and requested to come to PSP Schuylkill Haven to view a photo lineup which included Raddy Toribio. At approx. 2000 hrs., Tara PANDHER, Deborah STEFFIE and Christy REBEHN arrived at PSP Schuylkill Haven. PANDHER and STEFFIE were independently shown the photo lineup and both positively identified Toribio in the eight person lineup as the person who had committed the robbery in the bank earlier on this day. (Doc. No. 53, Attach. 3.)

As plaintiff notes in his brief in opposition to the motion, (Doc. No. 56, at 13), the affidavit states that three bank employees were brought to the police station to identify the robber in a photo lineup. (Doc. No. 53, Attach. 3.)

Of those three employees, two made an identification, but there is no mention about whether the third employee made an incorrect identification or recognized anyone at all. (Doc. No. 53, at 3.) The police record indicates that she had only seen the perpetrator from the side and did not recognize anybody based on frontal portraits used in the lineup, (Doc. No. 53, Attach. 2), but this information was omitted from the affidavit. (Doc. No. 53, Attach. 3.)

The court believes this information was of a kind a reasonable person would know that a judge would want to consider in choosing to issue a warrant. Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000) (finding that information about eye-witness victim's lack of identification is kind of thing any reasonable person would expect judge to consider). Of course, the information in the affidavit does not specify whether or not the employee identified the wrong person in the lineup or simply could not identify anyone at all. Nonetheless, the court believes this was a reckless omission under either circumstance. Id.

However, while this information may have been omitted with reckless disregard, it is not ultimately material in this case. An omission is material if the judge issuing the warrant would not have issued it had all the facts been known. Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000). Here, probable cause was supported by two eyewitness identifications and an anonymous tip.

(Doc. No. 53, Attach. 3.) Information about one witness that could not identify the suspect, indeed did not recognize anyone in the photo lineup, would not reasonably be sufficient to change a magistrate's determination of probable cause, given the totality of the circumstances.

Plaintiff next argues that the affidavit should have detailed the procedures used in the photo lineup so the judge would have been aware that it was improperly suggestive. (Doc. No. 56, at 20.) He states:

> As held by the Supreme Court in Foster v. California, . . . a line-up can be so unnecessarily suggestive that is [sic] conductive to a [sic] irreparable [sic] mistaken ID and thereby violates that [sic] Due Process Claim of the Fourteenth Amendment. That is what happened here and this illegal photo lineup led to the poisoning of the Affidavit of Probable Cause. Mapp v. Ohio, 367 U.S. 643 (1961). (Doc. No. 56, at 20.)

Plaintiff points out that officer Sadusky generated a photo lineup of eight people, the top left of which contained a photo of plaintiff. (Doc. No. 56, at 20; Doc. No. 53, Attach 4.) When the eyewitnesses arrived at the police station, officers showed them a surveillance photo of the perpetrator and then asked the witnesses to pick him out of the lineup. (Doc. No. 52, Attach. 4.) Two of them were able to make an identification while the third had "only seen the actor from the side and could not definitely identify any of the subjects in the photo line-up as being involved." (Doc. No. 53, Attach. 2.) Plaintiff argues that defendant Spece omitted any reference in the affidavit of probable cause to the use of the surveillance images. (Doc. No. 53, Attach. 3.) The use of these

images should have been disclosed, plaintiff argues, because they created an impermissibly suggestive lineup. (Doc. No. 56, at 20-21.)

Information about the particular police procedure used concerning the surveillance pictures, while relevant to the suggestiveness of the lineup and the probative value of an identification later at trial, is not the kind of omission which would destroy probable cause in this case. Since the affidavit is not intended to be a comprehensive narrative of a defendant's investigation, this information was not something that "any reasonable person would have known . . . the judge would wish to know [about]." Wilson v. Russo, 212 F.3d 781, 788 (2000). Accordingly, its omission was not made with reckless disregard.

Finally, plaintiff argues that defendant Spece omitted information that one of the bank tellers did not get a good look at the perpetrator's face. Plaintiff argues that the affidavit should have "explained to the judge that this witness went from a glimpse [during the robbery] to a positive I.D. [at the lineup], so the court could evaluate the conclusion about the existence of probable cause." (Doc. No. 56, at 20.) Instead, defendant Spece merely stated, "[the eyewitnesses] were independently shown the photo lineup and both positively identified Toribio in the eight person lineup as the person who had committed the robbery." (Doc. No. 53, Attach. 3.)

As noted before, "[w]e cannot demand that police officers related the

16

entire history of events leading up to a warrant application with every potentially evocative detail." Id. Some facts, especially descriptive information that goes to the credibility of witness identifications, are best disclosed through impeachment of the identifying witness at trial. Id. at 788. As such, this information can not be said to have been omitted with reckless disregard.

In light of the foregoing, defendant's motion for summary judgment on plaintiff's false arrest claim is **GRANTED**.

## II. FALSE IMPRISONMENT[1]

Defendant also argues that he has a claim for false imprisonment because he was not immediately released after the police obtained exculpatory information indicating that plaintiff was not the suspected robber. (Doc. No. 56, at 22.) Under §1983, a party has a claim for false imprisonment if he is incarcerated pursuant to an arrest made without probable cause. Luck v. Mount Airy No. 1, LLC, 12-CV-887, 2012 WL 4747475, \*5 (M.D.Pa. 2012). Generally, "an arrest based on probable cause could not become the source of a claim for false imprisonment," unless "exculpatory information comes to light after a proper arrest." Rowe v. Romano, 940 F.Supp. 798, 803 (E.D.Pa. 1996); but see Wilson v. Russo, 212 F.3d 781, 792 (3d Cir. 2000) (acknowledging that the issue has not been settled in the Third Circuit).

---

[1]Plaintiff refers to this claim as "incarceration without probable cause."

Because the court has determined that there was probable cause to arrest him in the first place, plaintiff must show that he was not released within a reasonable amount of time after discovering exculpatory information tending to controvert probable cause.

The parties' respective statements of material fact establish that plaintiff has failed to make such a showing. Defendant points to both the Police Incident Report and the depositions of Officer Spece to show that plaintiff was released from custody the same day the department received information about a similar robbery that indicated plaintiff may be innocent. (Doc. No. 53, Attach. 2 (police report); Doc. No. 53, Attach. 1 (deposition)). Defendant Spece indicates in his report that he contacted the DA's office "[u]pon receipt of this information" to inform the state attorney that plaintiff may not have been the perpetrator. (Doc. No. 53, Attach. 2.) Plaintiff has pointed to nothing in the record to controvert this evidence, so the court must accept defendants' version of the facts as true. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (non-moving party must point to some evidence once moving party has made prima facie showing). Because plaintiff was released the same day that police had doubts about his culpability, plaintiff cannot state a false imprisonment claim for which relief can be granted. As such, defendant's motion for summary judgment on plaintiff's false imprisonment claim will be **GRANTED**.

## III. MALICIOUS PROSECUTION

Finally, defendants argue that the malicious prosecution claim fails because plaintiff has not proven a lack of probable cause or shown malice on the part of defendants. (Doc. No. 54, at 11-19.) To prove a malicious prosecution claim, a party must show:

> (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiffs' favor; (3) the proceeding was initiated without probable cause; (4) defendants acted maliciously or for a purpose other than bringing plaintiffs to justice; (5) plaintiffs suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005).

The probable cause inquiry is the same for malicious prosecution as it is for false arrest and false imprisonment. Petaccio v. Davis, 76 Fed. Appx. 442, 445 (3d Cir. 2003) (equating probable cause for prosecution with probable cause for arrest); Wright v. City of Philadelphia, 409 F.3d 595, 604 (3d Cir. 2005) (discussing probable cause for prosecution) Spiess v. Pocono Mountain Regional Police Dept., 10-CV-287, 2013 WL 1249007, *13 (M.D.Pa. 2013) (arguments for probable cause are similar under both claims). Because the court has determined that probable cause existed for plaintiff's arrest and imprisonment, probable cause also existed for plaintiff's prosecution. Thus, plaintiff has failed to prove the third prong of his malicious prosecution claim.

Plaintiff has also failed to point to any evidence indicating the police acted maliciously. Instead he argues that the question of defendants' motive

is a question solely for the jury, implying that the court should not dismiss the claim at this stage. (Doc. No. 56, at 23.) It is true that malice is a question of fact for the jury. Milbourne v. Baker, 11-CV-1866, 2012 WL 1889148, \*13 (E.D.Pa. 2012). Nevertheless, the court may decide issues of fact if it determines that there is no genuine issue of material fact, such that a reasonable jury could only come to one conclusion on the issue. Espinosa v. County of Union, 212 Fed.Appx. 146, 159 (3d Cir. 2007) (malice is question of fact for jury unless no reasonable jury could return verdict for plaintiff). Of course malice may be inferred from the circumstances, but plaintiff provides absolutely no evidence that points to the slightest degree of malice on the part of defendants in this case. Plaintiff was arrested because he was identified by his ex-girlfriend and two bank tellers as the perpetrator. (Doc. No. 53, Attach. 3.) He looked very similar to the person ultimately arrested for the crimes and even admitted there was a resemblance. (Doc. No. 53, Attach. 2.) The court has already determined that police had probable cause to arrest and detain plaintiff, and defendants released him the same day they obtained exculpatory evidence. (Doc. No. 53, Attach. 2 (police report); Doc. No. 53, Attach. 1 (deposition)). Criminal charges were withdrawn the first business day after plaintiff was released to give police time to confirm that plaintiff was no longer a suspect. (Doc. No. 53, Attach. 1.) None of these facts remotely suggests that defendants acted maliciously, and plaintiff fails to point to any evidence

which would create such an inference. Thus, defendants' motion to dismiss the malicious prosecution claim will be **GRANTED**.

## IV. QUALIFIED IMMUNITY

Qualified immunity protects government officials when performing "discretionary functions . . . if their conduct did not violate a clearly established statutory or constitutional right of which a reasonable person would have known." Richardson v. Kane, 11-CV-2266, 2013 WL 1452962, *12 (M.D.Pa. 2013). Qualified immunity grants "not merely a defense to liability, but rather, immunity from suit" and "affords ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Id. Of course, this inquiry varies depending "largely upon the level of generality at which the relevant legal rule is to be identified." Wilson v. Layne, 526 U.S. 603, 614 (1999). The Supreme Court has said:

> In *Anderson*, we explained that what clearly established means in this context depends largely upon the level of generality at which the relevant legal rule is to be identified. Clearly established for purposes of qualified immunity means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. Id. at 614-15.

The question in this case, therefore, is whether a reasonable officer could have believed that arresting plaintiff on the basis of an anonymous tip

and two witness identifications was lawful, "in light of clearly established law and the information the officers possessed." Cf. id. at 615. This question must be answered in the affirmative. As stated above, defendants had probable cause to arrest plaintiff in this case, and released him the same day police suspected another person was responsible for the robberies. Qualified immunity protects all but "plainly incompetent" and "knowing[] violat[ions]," (Richardson v. Kane, 11-CV-2266, 2013 WL 1452962, *12 (M.D.Pa. 2013)), and, based on the facts in this case, the court is unable to conclude that defendants acted incompetently or knowingly violated the law. Therefore, defendants' actions are protected by qualified immunity and defendants' motion for summary judgment will be **GRANTED** as to the application of qualified immunity.


## CONCLUSION

In hindsight, it is clearly unfortunate that the plaintiff was misidentified as the bank robber and arrested, but claims for false arrest, false imprisonment, and malicious prosecution do not accrue unless the government lacked probable cause to believe the person they suspected committed a crime. Here, plaintiff has failed to prove that defendants lacked probable cause or acted maliciously so, despite defendants' mistaken identity, they may not be held liable. Furthermore, defendants are protected by

qualified immunity because their actions did not violate a clearly established constitutional right. In light of the foregoing, defendants second motion for summary judgment will be **GRANTED IN ITS ENTIRETY** and plaintiff's complaint will be **DISMISSED WITH PREJUDICE**.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

DATE: June 4, 2013
O:\Mannion\shared\MEMORANDA - DJ\2010 MEMORANDA\10-2441-01.wpd